Filed 10/9/24  In re P.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re P.A., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083781 |
| Plaintiff and Respondent, | (Super.Ct.No. J293357) |
| v. | OPINION |
| P.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Defendant and appellant P.C. ("Father") is the alleged father of P.A., a girl born in September 2018. Father appeals from the April 29, 2024 orders, summarily denying Father's Welfare and Institutions Code section 388[1] petition, and the section 366.26 orders terminating parental rights and placing P.A. for adoption. In his petition, Father sought presumed father status, visitation, and reunification services for P.A.

Father claims the juvenile court abused its discretion in denying his section 388 petition, summarily and without an evidentiary hearing. He claims his petition made a prima facie showing of new evidence, and that granting the petition may have served P.A.'s best interests. Thus, Father argues the April 29, 2024 orders must be reversed and the matter remanded for an evidentiary hearing on Father's petition.

We conclude Father's petition was properly denied without an evidentiary hearing. Regardless of whether Father made prima facie showings of new evidence or change of circumstances, Father did not make a prima facie showing that granting Father presumed father status, visitation, and reunification services may have served P.A.'s best interests. (§ 388, subd. (d).) Thus, we affirm the April 29, 2024 orders.

# II. FACTS AND PROCEDURE

A. *The Initial Proceedings for P.A.*

On May 31, 2022, plaintiff and respondent San Bernardino County Children and Family Services (CFS) took P.A. into custody pursuant to a detention warrant,

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

authorizing CFS to detain P.A. from her mother, Y.A. (Mother), and from Father. On May 30, Mother went to a hospital, with P.A., and appeared to be under the influence. P.A., then age three, was nonverbal and was reported to have autism. The hospital determined Mother was medically unable to care for P.A. because Mother was at risk of passing out due to very low hemoglobin and anemia. Mother was also "exhibiting odd behavior such as accusing medical staff of things that did not occur," and Mother said she had been evicted from her home on May 30. Against medical advice, Mother left the hospital with P.A., after Mother was told CFS would be called if Mother could not arrange care for P.A.

On the following day, May 31, 2022, law enforcement found Mother, sleeping in a car wash parking lot while P.A. was playing. Mother said she had no vehicle and no place to go, and was " 'all over the place' " in explaining her circumstances. CFS was called to the scene, spoke with Mother, and later obtained the detention warrant and took P.A. into custody. In prior contacts with CFS, Mother had disclosed being diagnosed with schizophrenia, dissociative disorder, depression, and post-traumatic stress disorder. In investigating a December 2021 referral, CFS noted "there was concern that Mother was not taking her medication" and that [M]other had abused methamphetamines "in the past." Mother admitted she was not taking her mental health medication. Mother also admitted "abus[ing] substances" in the past but denied any substance use during the previous 20 years.

Mother also reported Father was living in Mexico, but Mother was not in contact with Father and had a restraining order against Father. Mother said she and Father

3

married in 2016 and separated at the time of P.A.'s birth (in September 2018). Father did not sign P.A.'s birth certificate. Mother said she had not seen Father in over three years, and she was in the process of filing for a divorce from Father.[2] CFS initiated an absent parent search for Father.

On June 2, 2022, CFS filed a petition alleging jurisdiction based on Mother's untreated mental health and substance abuse issues, Mother's failure to provide a safe and appropriate living environment for P.A., Father's failures to provide care and support for P.A. and to protect P.A. from Mother's conduct, and Father's unknown whereabouts and ability to parent P.A. (§ 300, subds. (b), (g).) On June 2, P.A. was placed with her maternal uncle and aunt, Mr. and Mrs. A. The A.'s home was later approved as a concurrent planning home.

In response to the court's questions at the June 3, 2022 detention hearing, Mother said Father was P.A.'s only possible biological Father, and Mother had a DNA test. Mother said Father left California to live in Mexico when P.A. was born, Mother had "no idea" where Father was, and there was no court order for visitation or child support. Father had "never" sent money for P.A., and Father had last seen P.A. when P.A. was two months old. Mother had seen Father's social media but "[did not] use it." Mother provided Father's birthdate and second last name. P.A. was ordered detained outside the parents' custody.

---

[2] Mother had three older children from a prior marriage who lived with their father; the youngest was 17 years old.

On September 26, 2022, the court sustained the allegations of the petition, granted Mother reunification services, and denied services to Father who remained an alleged father whose whereabouts were unknown. At the 12-month review hearing on September 18, 2023, Mother's services were terminated, and a section 366.26 hearing was set for January 16, 2024.

The section 366.26 hearing was continued several times in order to notify the parents of the hearing. At the hearing, CFS recommended terminating parental rights and selecting adoption as P.A.'s permanent plan. CFS reported P.A. was "thriving" with Mr. and Mrs. A. and had no medical, emotional, mental diagnoses, and no developmental delays. Mr. A. was willing to adopt P.A.

Father first appeared in the case at the continued section 366.26 hearing on March 27, 2024. Counsel was appointed for Father, and the matter was continued to April 29. On April 23, Father filed his section 388 petition seeking presumed father status, reunification services, and visitation.

B. *Father's Section 388 Petition*

In his petition, Father alleged he could provide "information and documentation" that was not available when the court made the jurisdiction findings and disposition orders on September 26, 2022. The petition stated Father "was previously in [P.A.'s] life and now wishes to resume that previous relationship. [P.A.] should have the opportunity to reunify with a parent who is willing to step up and do what is necessary to reunify with his child. [P.A.] has a parent who is ready and willing to do what is required to achieve reunification."

In an attached declaration, Father stated he and Mother were married at the time of P.A.'s conception and birth; they were still married; Father was at the hospital when P.A. was born; Father "signed paperwork at the hospital" stating he was P.A.'s father; after P.A. was born, Father took a paternity test which confirmed he was P.A.'s father. Father and Mother separated shortly after P.A. was born; a few weeks later, Father resumed his relationship with Mother; Father lived with Mother and P.A. until June 2019; and, during this time, Father financially supported P.A. and "held [P.A.] out to be" his own daughter. In June 2019, Father left the home, and Father's relationship with Mother ended after Mother "committed an act of domestic violence against" Father. Father last saw P.A. in June 2019. "A few months" after Father left the home, Mother obtained a restraining order against Father. Due to the restraining order, Father did not "make any contact" with Mother or P.A. Father claimed he did not respond to Mother's messages asking Father for money because he did not want to violate the restraining order.

After his relationship with Mother ended, Father began living in Mexico to care for his parents, and Father "would go back and forth between the United States and Mexico." "Sometime in 2022 a letter was sent to [Father] at [his] sister's address in California, letting [Father] know [P.A.] had been removed from [Mother]. The letter did not mention any court dates. [Father] believe[d] the letter may have been received in August 2022. When the letter was received, [Father] was still in Mexico and did not return to the United States until a month or two later."

Father next "heard about [the] case . . . sometime between June 2023 and January 2024 when [Father] received a phone call from" CFS, informing Father of "two

6

upcoming court dates."[3]  Father went to court on January 16, 2024, not knowing the date had been "vacated."  After receiving the phone call from CFS, Father "made many efforts to contact the social worker" but "was not able to speak to a social worker until January 16.  At that time, Father requested visits with P.A.  Father next went to court on March 27, 2024, and was appointed counsel.  By his petition, Father was requesting "visits and services" so he could reunify with P.A.

Father attached several documents to his petition:  (1) A "DNA test report" dated February 6, 2019, from DNA Services Limited, showing Father's biological paternity of P.A. but stating there was "no chain of custody" for Father's biological sample; and (2) three unauthenticated and unexplained documents concerning Father's Riverside County probationary status.  These three documents were (1) a "domestic violence report," from the Riverside County Probation Department, indicating Father had not completed a 52-week domestic violence course, in an unspecified case, as of August 23, 2023; (2) another document from the Riverside County Probation Department, indicating Father was on summary probation, in an unspecified case, as of July 19, 2023; and (3) a "Time Completion Memorandum" from the Riverside County Sheriff Department, stating Father had "completed his commitment" in case number RIF20011652 on November 8, 2023.

---

[3] The record includes a declaration of due diligence showing that, on October 6, 2023, CFS "telephonically noticed" Father of the date, time, and location of the January 16, 2024 section 366.26 hearing, and provided Father with the social worker's phone number.  In the October 6 phone call, Father provided CFS with an address in Apple Valley, but numerous attempts to serve Father with written notice of the section 366.36 hearing at that address were unsuccessful.

7

On April 29, 2024, the court heard argument on whether to hold an evidentiary hearing on Father's petition. Following argument, the court ruled the petition did not make the required prima facie showings and denied the petition without an evidentiary hearing. Next, the court proceeded to the section 366.26 hearing, terminated parental rights, and selected adoption as P.A.'s permanent plan. Father appeals from the April 29, 2024 orders.

## III. DISCUSSION

Father claims the juvenile court abused its discretion in summarily denying his section 388 petition, without an evidentiary hearing. We conclude the petition was properly denied without an evidentiary hearing.

### A. *Legal Principles*

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. [Citation.] 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' " (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; § 388, subd. (a).) " 'New evidence' " means "material evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered." (*In re H.S.* (2010) 188 Cal.App.4th 103, 105, 108-109.)[4] Any

---

[4] The section 388 modification procedure is an " 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re*

*[footnote continued on next page]*

alleged change of circumstance must be substantial. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)

California Rules of Court, rule 5.570(d), allows a juvenile court to deny a section 388 petition, without an evidentiary hearing, on specified grounds, including that the petition "fails to state a change of circumstance or new evidence that may require a change of order" or "fails to demonstrate that the requested modification would promote the best interests of the dependent child." (Cal. Rules of Court, rule 5.570(d)(1), (2); *In re Alayah J.* (2017) 9 Cal.App.5th 469, 479.) The court is required to hold a hearing on the petition, "[i]f it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d); *In re I.B.* (2020) 53 Cal.App.5th 133, 152.)

To obtain a hearing on a section 388 petition, the parent must make a prima facie showing as to both elements; that is, the parent must sufficiently allege both a change in circumstances or new evidence *and* that the proposed change of order would promote the child's best interests. (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 7; *In re K.L.* (2016) 248 Cal.App.4th 52, 61.) Although the petition should be liberally construed in favor of granting an evidentiary hearing on the petition, the prima facie requirement is not met unless the alleged facts, if supported by creditable evidence, would sustain a favorable decision on the petition. (*In re Samuel A.*, at p. 7.) In determining whether the petition

---

*Kimberly F.* (1997) 56 Cal.App.4th 519, 528.) "Even after the focus has shifted from reunification, the [statutory] scheme provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of [the child's] custody status." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

9

made the required prima facie showings, the court may consider the entire factual and procedural history of the case. (*In re K.L.*, at p. 62.) We review the summary denial of a section 388 petition for an abuse of discretion. (*Id.*, at p. 61.) If the denial is based on undisputed facts, our review is de novo. (*In re Samuel A.*, at p. 7.)

B. *Analysis*

Father argues he "presented sufficient, prima facie, new evidence—establishing presumed father status" and that granting his petition by ordering visitation and reunification services may have served P.A.'s best interests. Father claims the evidence he adduced with his petition was "new" in that Father could not have presented the evidence at or before the September 26, 2022 jurisdiction and disposition hearing, given that Father did not receive actual notice of that hearing.

We conclude Father's petition was properly denied, summarily and without an evidentiary hearing. It is unnecessary to determine whether Father made a prima facie showing that he was P.A.'s biological father *and* presumed father (Fam. Code, § 7611, subd. (d)), and whether Father presented any "new evidence" or changed circumstances. We do not decide these questions because the entire record, including Father's proffered evidence, shows Father did not make a prima facie showing that granting Father visitation and reunification services may have served P.A.'s best interests.

Father's evidence shows Father abandoned P.A. in June 2019, when P.A. was nine months old; Father never supported P.A. after that time; Father refused Mother's requests to send money to support P.A.; Father has not seen P.A. since she was nine months old; and P.A. was over five and one-half years old when Father filed his section 388 petition

10

in April 2024.  The record also shows P.A. had a lifelong bond with her maternal uncle, Mr. A., and other maternal relatives; P.A. was thriving in Mr. A.'s care; Mr. A. was willing to adopt P.A.; and P.A. was generally and specifically adoptable.

In sum, Father did not make a prima facie showing that P.A.'s interests may have been best served by finding Father was P.A.'s presumed Father, and ordering visitation and reunification services for Father.  Granting Father's section 388 petition would have meant delaying permanency for P.A., perhaps for a substantial period of time, in order to give Father an opportunity to develop a parental relationship and to reunify with P.A., with only a speculative possibility that would occur.  Based on the entire record, the court could have reasonably concluded that P.A.'s interests were best served by denying Father's petition, given P.A.'s longstanding parental bond with Mr. A., and Father's abandonment of and failure to support P.A. since June 2019.  Father was not entitled to an evidentiary hearing on his section 388 petition, and the trial court did not abuse its discretion in denying Father's petition without an evidentiary hearing.

## IV.  DISPOSITION

The April 29, 2024 orders denying Father's section 388 petition, terminating parental rights to P.A., and selecting adoption as P.A.'s permanent plan, are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

McKINSTER _____

Acting P. J.

CODRINGTON _____

J.